UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21039-CIV-LENARD/O'SULLIVAN

**FRIDA KAHLO CORPORATION,**

    Plaintiff,

v.

**TUPPERWARE CORPORATION,
TUPPERWARE BRAND
CORPORATION, TUPPERWARE
BRANDS LATIN AMERICA HOLDINGS,
LLC,**

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (D.E. 16)

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss (D.E. 16), filed on June 20, 2013.  Plaintiff filed a Response (D.E. 23), on July 22, 2013, to which Defendants filed their Reply (D.E. 26), on August 8, 2013.  Having considered the Motion, the Response, the Reply, and the record, the Court finds as follows.

**I.**     **Background**[1]

Plaintiff Frida Kahlo Corporation, a Panamanian Corporation, asserts that it owns and controls the copyrights, trademarks, and exclusive rights to distribute and license any and all intellectual property pertaining to Frida Kahlo—the deceased Mexican artist. (D.E. 14 ¶P10-11).  Plaintiff claims that it purchased the Frida Kahlo intellectual property

---

[1] The factual allegations in Plaintiffs' Complaint are taken as true.  See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

rights in January 2005 from the Kahlo family. (Id. ¶22). After acquiring the Frida Kahlo intellectual property rights, Plaintiff claims that it registered additional rights and marks and entered into licensing agreements with third parties to exhibit, promote, develop, and sell Frida Kahlo products. (Id. ¶24). Plaintiff alleges that a potential third-party licensee claimed that Defendants were infringing upon Plaintiff's Frida Kahlo intellectual property rights. (Id. ¶25). Plaintiff investigated the claim by visiting the United States Tupperware website. (Id. ¶26). Plaintiff navigated the site by selecting links that brought it to Tupperware's Argentine website. (Id.). Through the Argentine website, Plaintiff claims that it was able to access an online catalog that contained infringing products. (Id.). Plaintiff claims that the same procedure will yield similar results for Tupperware's Mexican website. (Id.). In addition, Plaintiff claims that Defendants are marketing infringing products on YouTube, Facebook, and eBay in the United States. (Id.).

Plaintiff claims that it purchased infringing products through a Tupperware Sales Consultant located in Mexico who then shipped the products to Plaintiff in Miami, Florida. (Id. ¶27). Plaintiff claims that the products contained intellectual property that it owned regarding Frida Kahlo. (Id.). Plaintiff subsequently sent a cease and desist letter to Defendants. (Id. ¶29). Defendants responded that they were not infringing and would not cease and desist. (Id. ¶30).

Plaintiff filed a First Amended Complaint, asserting various claims based on the Lanham Act, 15 U.S.C. §§ 1051 et seq., the Copyright Act, 17 U.S.C. §§ 101 et seq., and state law. (Id. ¶¶32-55). Plaintiff claims that Defendants are infringing upon its Frida

Kahlo intellectual property rights by selling and marketing various infringing products through catalogs, magazines, and websites. (Id. ¶¶1, 18-20, 26-28).

## II.     Motion to Dismiss

Defendants have filed a Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6). (D.E. 16). Under Rule 12(b)(1), Defendants argue that the Court lacks subject matter jurisdiction over this action because the Lanham Act and the Copyright Act do not generally apply to regulate extraterritorial conduct. (Id. at 10-12). To that end, Defendants claim that the alleged infringing products "were made and marketed only in Mexico, Guatemala, and Argentina." (Id. at 12). To the extent that Plaintiff may apply to Lanham Act to regulate Defendants' extraterritorial conduct, Defendants argue that Plaintiff has failed to allege that any foreign activity has had substantial effects in the United States. (Id. at 10-11). Under Rule 12(b)(6), Defendants argue that Plaintiff has failed to state a claim as to any Defendant because Plaintiff has failed to allege specific factual allegations regarding any Defendants' role in the alleged infringing conduct. (Id. at 7-10). Even if Plaintiff had, Defendants argue, Plaintiff's claims fail to state a valid cause of action under any federal or state law. (Id. at 12-19).

Plaintiff has filed a Response in Opposition. (D.E. 23). Plaintiff argues that, under the Lanham Act, the Court has subject matter jurisdiction because the "Lanham Act provides a civil right of action against parties misusing . . . a mark used 'in commerce.'" (Id. at 10-11) (quoting 15 U.S.C. § 1225). Plaintiff asserts that Defendants' infringing conduct "occurred in commerce" because a Mexican Tupperware Sales

3

Consultant mailed infringing products from Mexico to the United States and because Defendants market infringing products on its websites.  (Id.).  Plaintiff alternatively argues that, should the Court find that the infringing conduct occurred solely in foreign countries, Defendants' extraterritorial conduct has affected United States commerce.  (Id. 12).  Plaintiff argues that the Court has subject-matter jurisdiction under the Copyright Act because Defendants, while acting within the United States, contributed to infringing conduct that occurred in foreign jurisdictions.  (Id. at 12-13).  Plaintiff next argues that it has sufficiently alleged facts setting forth Defendants' role in the infringing conduct.  Specifically, Plaintiff asserts that it has alleged that Defendants, through either action or inaction, were directly or vicariously liable for the conduct of infringing subsidiaries.  (Id. at 3-9).  Lastly, Plaintiff argues that it has sufficiently alleged facts to state valid causes of action under federal and state law.  (Id. at 13-18).

### III.   Legal Standard

#### A.   Rule 12(b)(1) Dismissal

A challenge to the Court's subject-matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). See Fed. R. Civ. P. 12(b)(1); Newman v. William L. Gunlicks Irrevocable Trust, 897 F. Supp. 2d 1270, 1273 (M.D. Fla. 2012).  Where a motion to dismiss is made under Rule 12(b)(1), subject matter jurisdiction may be attacked either facially or factually. McElmurray v. Consolidated Gov't of Augusta–Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007).

> Facial attacks on the complaint require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the

motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations and internal quotation marks omitted).

The attack in this case is factual because the Parties rely on various affidavits and additional evidence not contained within Plaintiff's First Amended Complaint. See Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335-36 (11th Cir. 2013) (finding that the defendant lodged a factual attack because the defendant "argued evidence outside the complaint"). Accordingly, the Court can consider extrinsic evidence outside of Plaintiff's Complaint to determine whether it has subject matter jurisdiction over Plaintiff's action. See Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). In so doing, the Court is "free to weigh the facts and [i]s not constrained to view them in the light most favorable to [Plaintiff]." Id. Plaintiff bears "the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).

**IV.    Discussion**

    **A. Lanham Act Claims**

Federal courts have subject-matter jurisdiction over claims brought under the Lanham Act when a defendant uses a plaintiff's trademark in interstate commerce. See 15 U.S.C. §§ 1114(1), 1125(a); see also Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1194-95 (11th Cir. 2001) (describing "use in commerce" as a "jurisdictional predicate"). "The Lanham Act defines 'commerce' broadly for jurisdictional purposes as

5

'all commerce which may lawfully be regulated by Congress.'" N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1218 n.5 (11th Cir. 2008) (quoting 15 U.S.C. § 1127). Under the Commerce Clause, Congress's authority to regulate commerce is limited to activity that "substantially affects" interstate commerce." United States v. Lopez, 514 U.S. 549, 559 (1995); see Planetary Motion Inc., 261 F.3d at 1194.

Plaintiff claims that Defendants' used its trademark "in commerce" when: (1) a Mexican Tupperware Sales Consultant mailed infringing products to Miami, Florida and (2) Defendants marketed infringing products on websites accessible in the United States. (D.E. 23 at 11).

Defendant Tupperware Brands Corporation,[2] as a parent company, "does not make, sell, or distribute any products, either in the United States or abroad. Such operations are undertaken by its subsidiaries." Roehlk Decl. Ex. 1, D.E. 16-1 at 3. Defendant Tupperware Brands Latin American Holdings, LLC is such a subsidiary, however, it "currently conducts no business" and "never did manufacture, market, advertise or distribute Tupperware products bearing Frida Kahlo's name, likeness or artwork." Id.

Administradora Dart, S. de R.L. de C.V. (AD) is a Mexican corporation and subsidiary of Defendant Tupperware Brands Corporation. Gonzalez de Arce Decl. Ex. 2, D.E. 16-2 at 3. The heirs of Frida Kahlo granted AD a license "to make and sell, in Mexico, Costa Rica, Guatemala, and Argentina, under the Tupperware brand, household

---

[2] Defendant Tupperware Corporation "is not a separate entity, but merely [Defendant Tupperware Brands Corporation]'s former name." Roehlk Decl. Ex. 1, D.E. 16-1 at 3.

6

containers featuring images created by Frida Kahlo and bearing the initials 'FK.'" Id. Under the license agreement, AD created a line of Tupperware-branded products bearing Frida Kahlo's artwork. Id. These products "were made in Mexico and marketed in Mexico, Guatemala, and Argentina, and not in the United States." Id. AD sells the products to independent Mexican distributors, who, in turn, sell the products to Mexican Sales Consultants. Id. The Mexican Sales Consultants are permitted to sell the products only to end consumers within certain Mexican territories. Id.

The evidence makes clear that AD was responsible for the manufacturing, marketing, and distribution of the alleged infringing products. See id. Plaintiff presents no evidence to refute these facts in the form of affidavits or otherwise. Plaintiff also has presented no evidence that the license granted to AD was or is invalid. Moreover, Plaintiff did not order the products directly from Defendants. Rather, Plaintiff ordered the products from a Mexican Sales Consultant whom, by mailing the products to the United States, violated the sales agreement entered into with AD. Plaintiff appears to allege that AD, along with Defendant Tupperware Brands Latin American Holdings, LLC, are mere instrumentalities of Defendant Tupperware Brands Corporation. Plaintiff, however, presents no evidence to support this contention and asserts only conclusory allegations. Accordingly, the Court finds that Plaintiff has failed to establish that Defendants have used its trademark "in commerce" with respect to the single sale that took place between Plaintiff and a Mexican Sales Consultant.

The Court finds the same to be true with respect to particular websites that contained the alleged infringing products. Tupperware's Argentine and Mexican

7

websites are hosted in foreign countries and are written in Spanish.  The websites, which are directed at Argentine and Mexican citizens, do not provide online ordering to any individuals, foreign or domestic.  Rather, the websites merely advertise Tupperware products that are available for purchase in those countries.  The websites hosted in the United States—YouTube and Facebook—also do not provide online ordering and all relevant text relating to the products is in Spanish.  Accordingly, Plaintiff has failed to establish that Defendants have used its trademark "in commerce" with respect to any website.  See McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005) ("[A]llowing subject matter jurisdiction under the Lanham Act to automatically attach whenever a website is visible in the United States would eviscerate the territorial curbs on judicial authority that Congress is, quite sensibly, presumed to have imposed in this area."); Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359, 365 (4th Cir. 2003) (finding that a "mark's protection [under the Lanham Act] may not be based on 'mere advertising'"); Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F. Supp. 2d 824, 831 (N.D. Ill. 2000) (finding that defendant's acts constituted "use in commerce" when the defendant used a plaintiff's mark on its products and entered into a sales contract with an Illinois resident, via its website hosted in Ireland, to sell its products).

  To the extent that Plaintiff argues that the Court has subject-matter jurisdiction under the Lanham act based on Defendants' alleged conduct that occurred outside of the United States, Plaintiff's argument is without merit.  Extraterritorial application of the Lanham Act permits federal courts to apply the act to a defendant's conduct that occurs

outside of the territorial boundaries of the United States when: (1) the defendant "is a United States corporation"; (2) "the foreign activity had substantial effects in the United States"; and (3) "exercising jurisdiction would not interfere with the sovereignty of another nation." Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc., 252 F.3d 1274, 1278 (11th Cir. 2001).

Plaintiff has not alleged facts or submitted evidence to satisfy the second and third factors. With respect to the second factor, Plaintiff has not sufficiently alleged or demonstrated that Defendants engaged in any foreign activity. First, the only alleged transaction occurred between Plaintiff and AD's Sales Consultant. See Gonzalez de Arce Decl. Ex. 2, D.E. 16-2 at 3. Even if Defendants had been involved, the substantial-effects test would not have been met. See McBee, 417 F.3d at 111, 123-24 (finding that sales that the defendant made into the United States that were induced by the plaintiff for purposes of litigation did not have a substantial effect on United States commerce); ACG Products, Ltd. v. Gu, 10-CV-716-WMC, 2011 WL 7748354, at *4 (W.D. Wis. Nov. 4, 2011). Second, Defendants' connection to the foreign-hosted websites is equally insufficient to satisfy the substantial-effects test. See McBee, 417 F.3d at 111, 123-24 (finding that a website that was hosted in Japan and written in Japanese did not have a substantial affect on United States commerce where the website provided information about the Japanese company and its products but did not allow for online ordering); ACG Products, Ltd., 2011 WL 7748354, at *4. With respect to the third factor, AD has provided evidence that it has obtained a license, negotiated under Mexican law, to manufacture and sell Tupperware products bearing images that Frida Kahlo created. AD

9

Trademark LIcnese, Ex. 2, D.E. 16-2 at 5. Because AD's use of that license is subject to Mexican law, the Court's application of the Lanham Act would necessarily interfere with Mexico's application of its law. Accordingly, the Court finds that Plaintiff has not established that the Court has subject-matter jurisdiction over Plaintiff's Lanham Act claims based on alleged extraterritorial conduct. See Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 643 (2d Cir. 1956) ("[T]he absence of one of the . . . factors might well be determinative and . . . the absence of [two] is certainly fatal.").

Because Plaintiff has failed to carry its burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over its Lanham Act claims, the Court is unable to consider those claims. See Paterson, 644 F.2d at 523.

### B. Copyright Act Claims

Title 28, U.S.C., § 1338 gives the district courts original jurisdiction over civil actions arising under federal copyright law. "[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." Palmer v. Braun, 376 F.3d 1254, 1258 (11th Cir. 2004). Thus, the Court does not have subject matter jurisdiction over infringing acts that took place "wholly outside the United States." See Subafilm, Ind. v. MGMPathe Communications Co., 24 F.3d 1088, 1096 (9th Cir.1994). Federal court do have subject-matter jurisdiction, however, "[w]here a person imports an infringing work into the United States." Palmer, 376 F.3d at 1258.

Here, the alleged infringement took place in Mexico by AD. AD, however, manufactured and sold the products under a license granted by Frida Kahlo's heirs. See

10

Gonzalez de Arce Decl. Ex. 2, D.E. 16-2 at 3.  Plaintiff has presented no evidence to refute the validity of the license.  And though Plaintiff received alleged infringing products in the United States that were mailed from Mexico, it was a Sales Consultant, acting in violation of the agreement entered into with AD, that mailed the products, not Defendants.  See id.  With respect to the websites that display the alleged infringing products, the products were manufactured under license by AD.  See id.  Thus, Plaintiff has failed to establish that Defendants engaged in infringing conduct within the United States or that Defendants mailed infringing products into the United States. See Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero, S.A., No. 07-22066-CIV, 2008 WL 4724495, at *3-4 (S.D. Fla. Oct. 24, 2008) (finding that the court did not lack subject-matter jurisdiction where the plaintiff adequately pled that the defendants committed infringing acts within the United States).

Accordingly, Plaintiff has failed to carry its burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction its claims brought under the Copyright Act.  Paterson, 644 F.2d at 523.

**C. State-Law Claims**

A district court may decline to exercise its supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). The dismissal of state law claims is strongly encouraged when federal law claims are dismissed prior to trial.  Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997).  Accordingly, the Court declines to exercise supplemental jurisdiction

11

over Plaintiff's state-law claims based on its lack of subject-matter jurisdiction over Plaintiff's federal claims.

### D. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), after a party has amended its pleading once as a matter of course, that "party may amend its pleading only with the opposing party's written consent or the court's leave." A court may deny leave to amend if doing so would be futile. Garfield v. NDC Health Corp., 466 F.3d 1255, 1270 (11th Cir. 2006). In this case, the Court finds that any amendment to Plaintiff's First Amended Complaint would be futile, because Plaintiff has failed to bear its burden that the Court has subject-matter jurisdiction over it federal claims.

### V. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (D.E. 16), filed on June 20, 2013, is **GRANTED**;
2. All pending motions are **DENIED AS MOOT**; and
3. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of March, 2014.

*[signature]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**